EDWARD H. KUBO, JR. 2499
United States Attorney
District of Hawaii

CANDACE KELLY CA BAR 191473
Assistant U.S. Attorney
Room 6100, PJKK Federal Bldg.
300 Ala Moana Blvd.
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Candace.Kelly@usdoj.gov

Attorneys for Respondent
UNITED STATES OF AMERICA

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LARRY PAGAN,<br><br>        Petitioner,<br><br>   vs.<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | ) CV. NO. 07-00355 ACK-BMK<br>) CR. NO. 04-00054 ACK<br>)<br>) UNITED STATES' RESPONSE TO<br>) MOTION UNDER 28 U.S.C. § 2255<br>) TO VACATE, SET ASIDE OR CORRECT<br>) SENTENCE BY A PERSON IN FEDERAL<br>) CUSTODY; EXHIBITS A - D<br>)<br>)<br>) |

<u>Table of Contents</u>

Page(s)

Table of Authorities . . . . . . . . . . . . . . . . . i

I.    PROCEDURAL BACKGROUND . . . . . . . . . . . . . . 1

II.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . 2

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . 5

     A.  Pagan's Claims that Barbee Provided
        Ineffective Assistance of Counsel Are Not
        Supported By the Record . . . . . . . . . . . . . 6

        1.  Legal Standards . . . . . . . . . . . . . . . 6

     B.  Each of Pagan's Allegations of Ineffective
        Assistance of Counsel Lack Merit as
        Barbee's Representation was at all
        Times Reasonable and Competent . . . . . . . . . 8

        1.  Barbee Made a Reasonable Tactical Decision
            Not to Call Certain Witnesses to Testify . . . . 9

        2.  Barbee Made a Reasonable Tactical Decision
            Not to_Call Pagan to Testify and Pagan
            Independently Decided Not to Testify . . . . . 11

        3.  Barbee Objected to the Government's Cross-
            Examination of Fernando Salas . . . . . . . . 14

        4.  Barbee Adequately Communicated to Pagan the
            Seriousness of his Case . . . . . . . . . . . 18

     C.  Pagan Has Also Failed to Allege and Prove Prejudice
        as a Result of Barbee's Performance . . . . . . . 20

        1.  Failure to Call Certain Witnesses Did Not
            Prejudice Pagan . . . . . . . . . . . . . . . 20

        2.  Pagan was Not Prejudiced by Barbee's
            Objection to the Cross-Examination of Salas . 21

3.  Pagan was not Prejudiced by Barbee's Alleged
        Failure to Communicate with Pagan or Pursue
        A Plea Agreement  . . . . . . . . . . . . . .  22

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . .  23

Table of Authorities

Cases                                                          Page(s)

Burger v. Kemp,
    483 U.S. 776 (1987) . . . . . . . . . . . . . . . . . . 14

Faretta v. California,
    422 U.S. 806 (1975) . . . . . . . . . . . . . . . . . . 12

Gustave v. United States,
    627 F.2d 901 (9th Cir. 1980) . . . . . . . . . . . . 11

McDonald v. United States,
    282 F.2d 737 (9th Cir. 1960) . . . . . . . . . . . . 11

Rock v. Arkansas,
    483 U.S. 44 (1987) . . . . . . . . . . . . . . . . . 12

Strickland v. Washington,
    466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . passim

Thomas v. Bible,
    983 F.2d 152 (9th Cir. 1993) . . . . . . . . . . . . 16

United States v. Martinez,
    883 F.2d 750 (9th Cir. 1989) . . . . . . . . . . . 12, 14

United States v. Span,
    75 F.3d 1383 (9th Cir. 1996) . . . . . . . . . . . . 22

United States v. Teague,
    953 F.2d 1525 (11th Cir. 1992) . . . . . . . . . . . 12

Zafiro v. United States,
    506 U.S. 534 (1993) . . . . . . . . . . . . . . . . . 22

Rules and Statutes

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . 1, 2, 6

<u>UNITED STATES' RESPONSE TO MOTION UNDER</u>
<u>28 U.S.C. § 2255 TO VACATE, SET ASIDE OR</u>
<u>CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY</u>

The United States of America, by its undersigned counsel, hereby responds to Larry Pagan's ("Pagan") motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.

I.   <u>PROCEDURAL BACKGROUND</u>

On April 14, 2005, a grand jury in the District of Hawaii returned a three-count Superseding Indictment charging Pagan with conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin (Count 1); attempted possession with intent to distribute 100 grams or more of heroin (Count 2); and attempted possession with intent to distribute cocaine (Count 3).  On August 23, 2005, Pagan proceeded to trial in the matter before the Honorable Alan C. Kay.  This trial resulted in a mistrial due to a hung jury.  A true and correct copy of the transcript of day 3 of the first trial is attached as Exhibit A.  The second trial, that was also before the Honorable Alan C. Kay, began on January 10, 2006.  On January 17, 2006, the jury found Pagan guilty on all three counts of the Superseding Indictment.  A true and correct copy of the transcript of day 4 of the second trial is attached as Exhibit B.

On May 8, 2006, judgment was entered and Pagan was sentenced to 120 months imprisonment, followed by 8 years supervised release, and ordered to pay a $300 special assessment.

Pagan filed an appeal on May 10, 2006. On March 28, 2007, the Ninth Circuit affirmed the district court's judgment.

On July 2, 2007, Pagan timely filed the instant Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. See 28 U.S.C. § 2255. In his motion, Pagan claims that Rustam A. Barbee, his attorney in the underlying criminal case, provided him with ineffective assistance of counsel. Pagan claims that Barbee was ineffective because he failed to: (1) call a key witness who purportedly would have offered exculpatory testimony and locate another key witness who likewise would have offered exculpatory testimony; (2) call Pagan as a witness; (3) object to the calling of "hostile witness;" and (4) communicate to Pagan the seriousness of his case, such that a plea agreement was never actively pursued. Pagan 2255 Motion at ¶ 12.

In order to respond to Pagan's motion, the United States filed a motion with this Court seeking a judicial finding that, by filing the instant motion, Pagan has waived his attorney-client privilege with Barbee. On July 30, 2007, the Court issued an order finding that Pagan waived his attorney-client privilege as to the instant § 2255 proceedings.

II. FACTUAL BACKGROUND

The instant case involved a conspiracy to distribute and to possess with intent to distribute drugs. Specifically,

2

the case focused on three separate parcels containing drugs that
were shipped to Hawaii from either California or Mexico between
December 2002 and July 2003.  Although none of the parcels were
shipped directly to Pagan, the evidence showed he was connected
to each of the shipments through: (1) his frequent telephone
calls to the recipients of the parcels just prior to and after
the delivery of the parcels in Hawaii; (2) his wiring of
thousands of dollars to Sergio Cruz, an individual believed to be
the supplier of the drugs; (3) his telephone contact with other
individuals who had also sent money to Cruz; and (4) the use of
his teenage daughter, Natalie Pagan, as a recipient of one of the
packages.  In addition, Pagan admitted to a law enforcement
officer that he had been paid to receive the package that was
shipped to his daughter.  He refused to reveal the identities of
the individuals who shipped this package and who the ultimate
recipients were for fear of being killed.  He also denied
knowledge of the parcel's contents.

Pagan claimed that he was not involved in a drug
trafficking conspiracy, as charged by the government.  Exhibit B
at 4-12.  Pagan's theory of the case was that a Spanish-speaking
Mexican by the name of Tito used Pagan's cellular telephone and
made the calls that linked Pagan's telephone to the three drug
parcels.  In support of this theory, Pagan called Fernando Salas,
a long-time friend of Pagan's, who testified that in 2002, he

3

happened upon Tito, a stranded motorist whose vehicle had broken down near Pagan's farm. Exhibit B at 4-15 to -20. Salas testified that he introduced Tito to Pagan. Exhibit B at 4-20. Violet Diederiks, Pagan's sister, testified that Pagan is the type of person who tends to be a bit too generous at times. Exhibit B at 4-37. Diederiks explained that she owned the property where Pagan lived and that Pagan agreed to let Tito live on the property. Exhibit B at 4-32 to -36. Diederiks stated that she subsequently kicked Tito off of her property because he was supposed to be there by himself, but often had others there with him. Exhibit B at 4-36. Diederiks also testified that on at least two occasions, she called Pagan's cellular telephone and Tito answered the phone, claiming Pagan had let him borrow his (Pagan's) phone. Exhibit B at 4-36 to -38. Pagan's nephew, Frank Torres, testified that he worked with Pagan and that he would call Pagan every day to play pranks on him because Pagan was the type of person that would "fall for anything." Exhibit B at 4-45. Lastly, Pagan's teenage daughter, Natalie Pagan testified that in 2003, shortly after she had signed for a FedEx delivery, officers raided her grandmother's house in Hilo where she resided. Exhibit B at 4-51 to -52. Natalie Pagan stated that the officers then ordered her to call her father using her home telephone to tell him that a package had been delivered for him. Exhibit B at 4-54, 4-58 to -59. Natalie Pagan also

4

testified that Pagan's girlfriend was a woman by the name of Lillian Salinas. Exhibit B at 4-49. Natalie Pagan stated that at the time the FedEx package arrived, her father had been expecting a letter, not a box, from Salinas who was in Mexico. Exhibit B at 4-63.

The government rebutted Pagan's theory and discredited the testimony of Diederiks, Natalie Pagan and Torres by introducing Pagan's telephone records. These records demonstrated that: (1) the frequency and consistency of the telephone contact between Salinas and Pagan on the days that there was also telephone contact with the Torres, Lopez, and Cruz telephones made Diederiks' claim that Pagan had lent his telephone to Tito illogical; (2) there were no calls from Natalie Pagan's home telephone number to Pagan's cellular telephone on the day she claimed law enforcement officers forced her to call her father; and (3) there were no calls to or from Pagan's nephew, Frank Torres, who testified that he called Pagan at least once a day.

III. <u>ARGUMENT</u>

A district court may grant relief under § 2255 if it determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the

prisoner as to render the judgment vulnerable to collateral attack."  28 U.S.C. § 2255.

Pagan raises four grounds in his § 2255 motion: (1) that he was denied effective assistance of counsel because his counsel failed to call "key witnesses" who allegedly would have provided exculpatory testimony; (2) that he was denied effective assistance of counsel because his counsel failed to call Pagan as a witness, despite Pagan's many requests to be allowed to testify; (3) that he was denied effective assistance of counsel because his counsel failed to object to the calling of a "hostile witness;" and (4) that he was denied effective assistance of counsel because his counsel failed to communicate to him the seriousness of his case such that a plea agreement was not actively pursued.

A.  Pagan's Claims that Barbee Provided Ineffective Assistance of Counsel Are Not Supported By the Record

1.  Legal Standards

The Supreme Court, in Strickland v. Washington, 466 U.S. 668 (1984), set forth a two-prong test for determining whether a criminal defendant received ineffective assistance of counsel.  In order for a criminal defendant's sentence to be overturned based on ineffective assistance of counsel, the defendant must first prove that the performance of counsel, considering all the circumstances, was so deficient that he or she was not functioning as "counsel" as guaranteed under the

6

Sixth Amendment.  Second, the defendant must prove that the deficient performance prejudiced the defendant by depriving him of a fair trial.  Id. at 691-92.  However, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  Id. at 697.

To show that counsel's performance fell below an objective standard of reasonableness, the defendant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  Id. at 690.  The court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  Id.  In making that determination, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  Id.

Even if the court finds that counsel's performance was deficient, relief cannot be granted absent a showing of prejudice.  To affirmatively prove prejudice, the defendant must show that there is a reasonable probability that, but for counsel's conduct, the result of the proceeding would have been different.  Id. at 694.  According to Strickland, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.

7

Indeed, the defendant who raises a claim of ineffective assistance of counsel has a very heavy burden to bear. As the court stated in <u>Strickland</u>: "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Id.</u> at 689.

B.  Each of Pagan's Allegations of Ineffective
    Assistance of Counsel Lack Merit as
    Barbee's Representation was at all
    <u>Times Reasonable and Competent</u>

As mentioned above, Pagan claims that he was denied effective assistance of counsel because Barbee failed to: (1) call "key witnesses" who allegedly would have provided exculpatory testimony; (2) call Pagan as a witness, despite Pagan's many requests to be allowed to testify; (3) object to the calling of a "hostile witness;" and (4) communicate to Pagan the seriousness of his case such that a plea agreement was not actively pursued. In the instant case, however, there is absolutely no evidence that Barbee's performance fell below an objective standard of reasonableness under prevailing norms.

1.   Barbee Made a Reasonable Tactical Decision
     Not to Call Certain Witnesses to Testify

Pagan claims that he was denied effective assistance of
counsel because Barbee failed to call a key witness who
purportedly would have offered exculpatory testimony.  Pagan 2255
Motion at ¶ 12.A.  Pagan further claims that Barbee failed to
locate another key witness who likewise, would have offered
exculpatory testimony.  Pagan 2255 Motion at ¶ 12.A.  Pagan, in
his § 2255 motion, fails to identify the two key witnesses he is
referring to.  A true and correct copy of the declaration of
Rustam A. Barbee is attached as Exhibit C.  Based upon Barbee's
declaration, it appears that Pagan may be referring to Lillian
Salinas, Pagan's girlfriend, and either an individual named Tito
or an unidentified individual who was the recipient of certain
Western Union wire transfers.  Exhibit C at ¶¶ 3 and 4.

With respect to Lillian Salinas, Barbee determined that
she had a criminal history that included drug-related offenses
and that her testimony would have contradicted a key piece of
evidence in the case.  Exhibit C at ¶ 4.  Specifically, Salinas
would have testified that she and Pagan were driving in an
automobile at the time Drug Enforcement Administration Special
Agent  ("SA") Rich Jones called Pagan's cellular telephone on
July 22, 2003.  Exhibit C at ¶ 4.  Salinas would have further
testified that Pagan was intoxicated at the time of the telephone
call and that Pagan was laughing because he believed the call was

9

a prank call from a friend.  Exhibit C at ¶ 4.  A true and
correct copy of the transcript of this telephone conversation was
marked as Government's Exhibit 5 at trial and is attached as
Exhibit D.  As the transcript of this telephone conversation
reflects, Pagan, at one point, tells SA Jones that he is having
difficulty hearing him because there is a television on in the
background.  Exhibit D at 4.  As Barbee states in his
declaration, the audio tape recording of the telephone call would
have conflicted with Salinas' testimony because Pagan does not
sound as though he is in an automobile, does not sound
intoxicated, nor is Pagan heard laughing.  Exhibit C at ¶ 4.  In
addition, later in the conversation, SA Jones tells Pagan to
write down his (SA Jones') telephone number.  Exhibit D at 17.
After a pause, Pagan states, "[y]ou no more one pencil?"  Exhibit
D at 18.  SA Jones asks who Pagan is talking to that is there
with him.  Exhibit D at 18.  Pagan replies that his niece is with
him.  Exhibit D at 18.  Accordingly, Barbee, in deciding not to
call Salinas as a witness, made a strategic decision, based on
the exercise of his reasonable professional judgment that her
testimony would have contradicted the conversation between Pagan
and SA Jones.

        With respect to Tito, Barbee, in his declaration,
states that Pagan did not provide him with a last name or any
type of contact information.  Exhibit C at ¶ 5.  With respect to

the recipient of the wire transfers, Barbee stated that he did not make any attempt to contact this individual because Pagan claimed he did not know this individual.  Exhibit C at ¶ 5.

The Ninth Circuit has held that counsel's decision not to subpoena an individual to testify is a matter of trial strategy.  McDonald v. United States, 282 F.2d 737, 741 (9th Cir. 1960)(finding that counsel's decision not to subpoena a witness who allegedly would have vindicated appellant was strategic). Further, "[m]ere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation."  Gustave v. United States, 627 F.2d 901, 904 (9th Cir. 1980)(citing Williams v. Beto, 354 F.2d 698 (5th Cir. 1965); McDonald, 282 F.2d at 741.  Thus, Barbee's decision not to call Salinas and Tito as witnesses clearly falls within the range of reasonable professional assistance.  As the Supreme Court stated in Strickland, "[b]ecause advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."  466 U.S. at 681.

> 2.  Barbee Made a Reasonable Tactical Decision Not to Call Pagan to Testify and Pagan Independently Decided Not to Testify

Pagan claims that he was denied effective assistance of counsel because Barbee failed to call Pagan as a witness despite

his "many requests" to testify.  Pagan 2255 Motion at ¶ 12.B.  It
is clear that a criminal defendant has a constitutional right to
testify in his own behalf at trial.  <u>Faretta v. California</u>, 422
U.S. 806, 819 (1975); <u>Rock v. Arkansas</u>, 483 U.S. 44 (1987);
<u>United States v. Martinez</u>, 883 F.2d 750, 754 (9th Cir. 1989).
Where defense counsel refuses to accept the defendant's decision
to testify and does not call him to the stand, defense counsel
has not acted "'within the range of competence demanded of
attorneys in criminal cases,' and the defendant clearly has not
received reasonably effective assistance of counsel."  <u>United
States v. Teague</u>, 953 F.2d 1525, 1534 (11th Cir. 1992)(quoting
<u>Strickland</u>, 466 U.S. at 687).  Contrary to Pagan's allegations,
this scenario was not present in the instant case.

        Pagan, after consulting with Barbee, elected not to
testify in his case.  Exhibit C at ¶ 6.  Even if Pagan had made
"many requests" to testify and Barbee refrained from calling him
to take the stand, the Court made additional inquiries of Pagan
after the defense called its last witness on January 13, 2006.
Exhibit B at 4-67 to -68.  Pagan could have voiced his desire to
testify at that point, but instead informed the Court that he did
not want to testify.

> THE COURT:      You wanted to talk to me, Mr. Barbee,
>                 have a colloquy?
>
> MR. BARBEE:     Yes, Your Honor.  Thank you very much.
>                 I have met with Mr. Pagan on many
>                 occasions and discussed his

constitutional right to testify in this
matter on his own behalf or, on the
other hand, his privilege against self-
incrimination, his right not to testify.
He has in my opinion made a knowing and
intelligent decision not to testify in
this matter, and that would be based
upon both advice of counsel and his own
independent decision.

THE COURT:        Is that correct, Mr. Pagan?

THE DEFENDANT: Yes, Your Honor.

THE COURT:        And as your counsel said, you understand
you do have a constitutional right to
testify and you also have a
constitutional right not to testify.
You understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT:        That's your decision, as you may consult
with your attorney.  And you – I take it
you have decided you do not want to
testify; is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT:        All right.  Thank you.

THE DEFENDANT: Thank you.

Exhibit B at 4-67 to -68.  As Pagan affirmed on the record, his

decision not to testify was based not only upon the advice of

Barbee, but upon his own independent decision.  The Court

inquired once again and asked Pagan to confirm that it was his

decision not to testify.  Exhibit B at 4-68.  Pagan again

indicated that he did not want to testify.  Exhibit B at 4-68.

Accordingly, Pagan's assertion that Barbee, despite Pagan's many

requests, denied him the opportunity to testify is unfounded.

13

Furthermore, Barbee made a reasonable strategic decision not to put Pagan on the stand. Pagan had several prior drug-related convictions. Exhibit C at ¶ 6. In addition, Pagan had previously informed Barbee that he was innocent of the charges in the instant case. Exhibit C at ¶ 10. Accordingly, if Pagan took the stand, his testimony would have been contradicted by a key piece of credible evidence. Specifically, Pagan's claim of innocence would have contradicted the previously mentioned recorded conversation between Pagan and SA Jones on July 22, 2003. During that conversation, Pagan admitted he was paid $300 to receive a package, that was later found to contain drugs, and deliver it to Waimea park. Exhibit D at 6. Thus, Barbee's decision not to call Pagan as a witness was strategic and based on his reasonable professional judgment. Exhibit C at ¶ 6. A lawyer's strategic decision not to call a criminal defendant to the stand does not amount to ineffective representation by the lawyer where that decision is reasonable. Martinez, 883 F.2d at 755. See Burger v. Kemp, 483 U.S. 776 (1987).

3. Barbee Objected to the Government's Cross-Examination of Fernando Salas

Pagan claims that he was denied effective assistance of counsel because Barbee failed to object to the calling of a "hostile witness." Pagan 2255 Motion at ¶ 12.C. Pagan states that this witness was "disqualified in the first trial leading to a mistrial." Pagan 2255 Motion at ¶ 12.C. Pagan argues that

14

this witness offered the same testimony in the second trial and was "disqualified" again, but only after the jury had heard the damaging statements.  Pagan 2255 Motion at ¶ 12.C.

Once again, Pagan fails to identify the "hostile witness" he is referring to.  It appears that Pagan is referring to Fernando Salas, a witness called by the defense.  As Pagan accurately states, Salas testified at Pagan's first and second trial.  Exhibit A at 114-25; Exhibit B at 4-15 to -22.

At Pagan's first trial, Salas testified that he was a long-time acquaintance of Pagan's.  Exhibit A at 115.  Salas stated that in 2002, he happened upon a stranded motorist while driving on Highway 19 on the island of Hawaii.  Exhibit A at 116-17.  Salas further testified that this individual's name was Tito and that he introduced Tito to Pagan.  Exhibit A at 117-18. During cross-examination of Salas, when the government's attorney asked Salas if he knew about drug dealing, Salas responded, "I – I have watched plenty TV court and such, yes."  Exhibit A at 124. Upon further questioning by the government, Salas testified that he had been convicted of possession with intent to distribute. Exhibit A at 125.  Barbee immediately objected to the government's line of questioning, asked that Salas' testimony be stricken, or alternatively, asked the Court to declare a mistrial.  Exhibit A at 125, 133-34.  The Court ruled that Salas' testimony regarding his prior conviction was inadmissible under

15

Rules 403 and 609 of the Federal Rules of Evidence and because the government failed to give the defense adequate notice of its intent to use evidence of a conviction more than 10 years old, as required by Rule 609(b).  Exhibit A at 140-41.  The Court then instructed the jury not to consider testimony about Salas' prior conviction.  Exhibit A at 141.  As previously mentioned, Pagan's first trial ended in a mistrial due to a hung jury.

Prior to the second trial, the government provided written notice to Barbee of its intent to use Salas' convictions to impeach him at trial.  Exhibit B at 4-24 to -26.  Barbee did not move to exclude this evidence prior to Salas' testimony.  At Pagan's second trial, the defense, once again, called Salas as a witness.  Exhibit B at 4-15.  Salas offered substantially the same testimony as he did in Pagan's first trial.  On cross examination, the government again inquired about Salas' knowledge of drug dealing.  Exhibit B at 4-21.  Salas responded that he had been "around" an incident in the past.  Exhibit B at 4-21.  Upon further questioning, Salas testified that he had been convicted of manufacturing and distributing cocaine.  Exhibit B at 4-22.

Barbee again objected to the government's cross-examination of Salas based upon the doctrine of "law of the case."  Exhibit B at 4-23.  Under the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court."  Thomas v. Bible,

16

983 F.2d 152, 154 (9th Cir. 1993).  Barbee argued that the Court
should instruct the jury to disregard this aspect of Salas'
testimony, or alternatively, grant a mistrial.  Exhibit B at 4-
23.  The Court ordered Salas' testimony regarding his prior
conviction stricken, finding such evidence unduly prejudicial.
Exhibit B at 4-25 to -26.  The Court once again instructed the
jury that they were not to consider Salas' testimony regarding
the prior conviction.  Exhibit B at 4-27.  "The court is going to
strike any reference to Mr. Salas having been arrested or
convicted dealing in drugs or manufacturing drugs, and I'm
instructing the jury to disregard that, don't consider that at
all as ever having – as your ever having heard about it.  You're
to totally disregard that."  Exhibit B at 4-27.

        Barbee did not move to exclude evidence of Salas'
convictions prior to Salas' testimony at the second trial, nor
did he object immediately after the government's cross-
examination touched upon the subject of Salas's prior conviction.
However, as the record reflects, Barbee was of the belief that
the doctrine of "law of the case" applied.  Regardless of whether
Barbee's failure to file a motion to exclude this testimony upon
receipt of the government's notice to impeach, or to object
immediately upon the government's first question to Salas
regarding drug dealing, renders Barbee's performance deficient,
Salas' testimony did not prejudice Pagan, as discussed below.

                              17

4.    Barbee Adequately Communicated to Pagan the
Seriousness of his Case

Pagan claims that he was denied effective assistance of
counsel because Barbee failed to inform Pagan of the seriousness
of his case, such that a plea agreement was never actively
pursued.  Pagan 2255 Motion at ¶ 12.D.  Pagan further claims that
Barbee never explained to him his chances of winning or losing at
trial and that Pagan "blindly followed" his recommendations
without question.  Pagan 2255 Motion at ¶ 12.D.

As Barbee's declaration and attached copy of a letter
from Barbee to Pagan dated February 1, 2005, demonstrate, Pagan's
claim lacks merit.  Barbee, in his letter to Pagan, summarizes
the charges against Pagan, the possible sentences he faced, and
even set forth Pagan's available legal options.  Exhibit C at pp.
8 -9.  Barbee's letter informed Pagan that he was facing a
mandatory minimum sentence of 5 to 40 years imprisonment on Count
1 and up to 20 years of imprisonment on Count 2.  Exhibit C at
p. 8.  Barbee further warned Pagan that if the government was
able to allege and prove that he had prior drug trafficking
convictions, the sentence he faced for Count 1 would increase to
10 years to life imprisonment and up to 40 years of imprisonment
for Count 2.  Exhibit C at p. 8.  Barbee then informed Pagan that
he had two options: (1) change his plea to guilty and provide
substantial assistance to the government in exchange for the
government moving the Court for a downward sentencing departure;

18

or (2) fight the case at trial and hope for an acquittal on both counts. Exhibit C at p. 9. Barbee's letter also acknowledges the fact that Pagan had told Barbee, as well as his previous attorneys, that he wanted to fight the case at trial and that he had told his previous attorneys that he was not guilty. Exhibit C at ¶ 10, p. 9. Most importantly, the bottom of the last page of Barbee's letter contains an acknowledgment signed by Pagan on February 4, 2005, that states, "I, LARRY PAGAN, have read and understand the foregoing letter from my attorney, advising me of my legal options in the above-referenced case." Exhibit C at p. 9.

Thus, Barbee's declaration and letter to Pagan directly contradict the allegations in Pagan's § 2255 motion. Barbee more than adequately communicated and discussed the seriousness of Pagan's case with him. Barbee's letter clearly informs Pagan that one of the options available to him is to change his plea to guilty and cooperate with the government. As Barbee's declaration indicates, this option was not pursued because Pagan had made clear to Barbee and others that he was not guilty and wanted to proceed to trial. Exhibit C at ¶ 13. Pagan's claim is not supported by the facts and Pagan cannot now try to blame Barbee for failing to pursue a plea agreement after repeatedly declaring his innocence.

C.  Pagan Has Also Failed to Allege and Prove Prejudice
    as a Result of Barbee's Performance

As discussed above, Barbee's performance did not fall
below an objective standard of reasonableness.  Each of the
grounds for relief cited by Pagan above either do not support a
claim of ineffective assistance of counsel or are entirely
without merit.  Even if Barbee's performance fell below an
objective standard of reasonableness, however, Pagan fails to
prove that he was prejudiced as a result.  Although much of the
government's case was based on circumstantial evidence,
consisting of telephone calls and wire transfers of money among
the drug traffickers, the evidence of Pagan's connection to and
involvement with arranging for drugs to be sent to Hawaii and
paying for them with wire transfers was overwhelming.

1.  Failure to Call Certain Witnesses Did Not
    Prejudice Pagan

As previously discussed, Barbee's decision not to call
certain witnesses to testify is a matter of trial strategy and
cannot, by itself, render his performance deficient.
Accordingly, Barbee's decision not to call certain witnesses did
not result in prejudice to Pagan.

Even if Barbee's performance was found to fall below an
objective standard of reasonableness, which it did not, Pagan
fails to prove prejudice as a result of his allegations of
ineffectiveness.  Establishing actual prejudice requires that

20

"[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

As previously mentioned, Pagan fails to identify the two key witnesses he is referring to who allegedly would have provided exculpatory testimony.  In addition, Pagan makes no indication of what those witnesses' testimony would have been, other than the bare assertion that their testimony would have been exculpatory.  Accordingly, Pagan fails to establish that had Barbee called him and the two other key witnesses to testify, there is a reasonable probability that the outcome would have been different.

        2.    Pagan was Not Prejudiced by Barbee's Objection to
              the Cross-Examination of Salas

Pagan appears to argue that he was prejudiced by Barbee's failure to timely and properly object to Salas' testimony.  Pagan 2255 Motion at ¶ 12.C.  As discussed above, Barbee did not move to exclude evidence of Salas's convictions prior to Salas' testimony at the second trial, nor did he object immediately after the government's cross-examination touched upon the subject of Salas's prior conviction.

To the extent that the jury heard statements regarding Salas' prior drug conviction before Barbee objected, the Court

promptly gave a clear and forceful instruction to the jury to completely disregard ever having heard about this matter. Exhibit B at 4-27.  It is well-settled that "juries are presumed to follow their instructions."  <u>United States v. Span</u>, 75 F.3d 1383, 1390 (9th Cir. 1996)(citing <u>Zafiro v. United States</u>, 506 U.S. 534, 540 (1993)).  Thus, the Court's instruction to the jury adequately addressed what prejudice, if any, arose from the statements regarding Salas' prior conviction.  In addition, Salas' testimony merely established that Salas introduced Pagan to Tito, a Spanish-speaking Mexican, in 2002 when Tito's car had broken down in 2002 near Pagan's farm.  Accordingly, it is more probable than not that the jury's having heard evidence of Salas' conviction did not affect the verdict.  Regardless, the government's evidence proving Pagan's involvement in a conspiracy to traffic in narcotics was overwhelming.

> 3.    Pagan was not Prejudiced by Barbee's Alleged Failure to Communicate with Pagan or Pursue a Plea <u>Agreement</u>

As Barbee's declaration and letter to Pagan demonstrate, Pagan's allegation that Barbee failed to communicate the seriousness of Pagan's case is unfounded and Pagan cannot possibly claim to have suffered prejudice where his counsel's representation was objectively reasonable and effective. Moreover, Pagan cannot claim to have suffered prejudice from Barbee's failure to pursue a plea agreement where Barbee was

representing Pagan consistent with his claims of innocence.

IV.   CONCLUSION

In the instant case, Pagan has failed to make a prima facie case for any of his § 2255 claims as he has not articulated how counsel's performance was deficient and how counsel's alleged deficient representation prejudiced him.   The allegations in Pagan's § 2255 motion do not state a claim upon which relief can be granted.   For the foregoing reasons, the United States requests that Pagan's § 2255 motion be denied in its entirety.

DATED: September 28, 2007, at Honolulu, Hawaii.

EDWARD H. KUBO, JR
United States Attorney
District of Hawaii


By /s/ Candace Kelly
    CANDACE KELLY
    Assistant U. S. Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

23

## CERTIFICATE OF SERVICE

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at his last known address:

Served by First Class Mail:

FCI Terminal Island                    September 28, 2007
Federal Correctional Institution
Mr. Larry Pagan
TCI 95157-022
P.O. Box 3007
San Pedro, CA 90731


/s/ Rowena Kang